[Civil No. 485.    Filed December 26, 1895.].

[42 Pac. 1025.]

## W. A. HARWOOD, Defendant and Appellant, v. A. WENTWORTH, Plaintiff and Appellee.

1. STATUTES—EVIDENCE OF—JOURNAL NOT ADMISSIBLE TO ALTER—REV. STATS. ARIZ. 1887, PARS. 1867, 1868, 1869, 1870; REV. STATS. U. S., SEC. 1844; 1 SUPP. REV. STATS. U. S., P. 230, CHAP. 212, CITED AND CONSTRUED.—A copy of an act of the territorial legislature certified under the hand and seal of the secretary of the territory is evidence of the act therein contained, and the provisions of such act cannot

be added to or taken from by evidence that the journals of the respective houses of the legislative assembly show that said act is not correct. Statutes, *supra*, cited and construed.

2. SAME—SAME—DUTY OF SECRETARY OF TERRITORY—AUTHENTICATION—REV. STATS. U. S., SEC. 1844, CITED.—If a document purporting to be an act of the legislative assembly be presented to the secretary of the territory, having upon it the signature of the governor, and purporting to have been approved and signed by him as a law, the secretary may treat it as a law, and cannot resort to any other means to determine whether it is a law or not. Statute, *supra*, cited.

3. SAME—SAME—JOURNALS—REV. STATS. ARIZ. 1887, CHAP. 4, TIT. 60, PAR. 2895, SEC. 18, CONSTRUED.—The provisions of the statute, *supra*, do not make the journals of the legislative assembly evidence as to the provisions of an act of the territorial legislature.

4. SAME—CONSTITUTIONAL LAW—CHANGING FEES DURING TERM—ACT NO. 51, LAWS 1895, ACT MARCH 21ST—SPECIAL LEGISLATION—NOT IN CONFLICT WITH HARRISON ACT—1 SUPP. REV. STATS. U. S., P. 503 (ORGANIC LAW OF ARIZONA, REV. STATS. 1901, PAR. 63).—The statute, *supra*, changing the mode of classification of counties from the number of registered voters to the assessed valuation of the property within the counties, although changing the fees of public officers during the term for which such officers are elected, is not void as in conflict with the Harrison Act, it not being special legislation.

AFFIRMED.—162 U. S. 547, 40 L. Ed. 1069, 16 Sup. Ct. Rep. 890.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Cochise. J. D. Bethune, Judge. Affirmed.

Statement of facts by Rouse, J.

Plaintiff instituted proceedings against defendant in the district court. The material parts of the complaint are as follows: "(2) That at the general election held throughout the territory of Arizona on the 6th day of November, A. D. 1894, plaintiff was duly elected to the office of county recorder of said county of Cochise, and thereafter duly qualified as such, and on the 1st day of January, 1895, entered upon the discharge of his duties as such recorder, and ever since has been and now is the duly elected, qualified, and acting recorder of said county of Cochise. (3) That at the time the plaintiff was so elected to said office, and entered upon the discharge of the duties thereof, as aforesaid, said

county of Cochise was what was denominated a first-class
county of said territory. (4) That on the —— day of Janu-
ary, 1894, . . . the defendant was duly elected and appointed
to the office of clerk of said board of supervisors of said
Cochise County, . . . and duly qualified as such clerk, and
entered upon the discharge of the duties of said office. (5)
That thereafter, and on or about the 21st day of March, 1895,
the legislative assembly of the territory of Arizona, for the
purpose of classifying the counties of said territory, and fix-
ing the compensation of county officers therein, passed an act
entitled 'An act classifying the counties of the territory and
fixing the compensation of the officers thereof,' which was
approved the 21st day of March, A. D. 1895, by the governor
of said territory; that said act of the legislature went into
force and effect thirty days after its passage and approval,
to wit, on the 21st day of April, 1895; that by the provisions
of said act the counties of said territory were divided into six
classes, according to the assessed valuation of the property in
said several counties; that according to said classification of
said counties as provided in said act, and according to the
terms thereof, said county of Cochise became and was and is
a county of the third class; that by the provisions of the third
subdivision of section 2 of said act, recorders of third, fourth,
fifth, and sixth class counties are made *ex officio* clerk of the
board of supervisors of the respective counties. And plain-
tiff avers that, as such recorder of said county of Cochise, he
is now, and has been since said 21st day of April, 1895, *ex
officio* clerk of the board of supervisors of said county of
Cochise, and as such is entitled to the possession of all the
books, papers, records, seal, and documents pertaining to said
clerk's office that are now in the hands of, and in the posses-
sion and under the control of, said defendant; that heretofore,
and subsequent to the date when the said act of the legis-
lature went into effect as aforesaid, to wit, on the —— day,
of May, 1895, plaintiff . . . as such recorder and *ex officio*
clerk of the board of supervisors of said county, demanded
of defendant that he deliver to plaintiff, as recorder and *ex
officio* clerk of the said board of supervisors of said county,
said books, papers, records, seal, and documents pertaining
to said office, but . . . defendant then and there refused, and
ever since has and still does refuse, and still does wrongfully

and unlawfully detain possession of all of said books, papers, records, seal, and documents pertaining to said office of *ex officio* clerk of said board of supervisors, and deprive plaintiff of the possession, to plaintiff's damage. . . . Wherefore plaintiff prays that a writ of *mandamus* be issued, . . . commanding him, the said defendant, . . . to forthwith deliver all said books . . . to plaintiff, . . . and for costs of suit.'' This complaint was supported by plaintiff's affidavit.   To said complaint defendant on June 3, 1895, filed an answer, in which he admitted he had possession of the books, records, etc., described in the complaint, and further alleged as follows: ''Defendant alleges that he is the duly appointed and qualified clerk of the board of supervisors, and as such is lawfully entitled to hold said office.  He alleges that the proposed act of the legislative assembly is not a law; that the same did not pass the said assembly as alleged.  He alleges that the said act, as the same passed both houses of said legislative assembly, contained a provision, section, and clause that the said act should not take effect and be in force before January 1, 1897, that the said clause or section was stricken out, omitted, and taken from said act after the same had passed both houses of said legislative assembly; that that clause is a part of said act, and that the said act, if valid, does not take effect until ——; that there was also a clause that 'all acts or parts of acts in conflict with this act are hereby repealed,' and that said clause was omitted and stricken out in the same way.  Alleges that the said alleged act was not duly passed by the legislative assembly, or by either house thereof, and that the same is not a law.''

The case was submitted to the court for trial without a jury on an agreed state of facts, consisting of a certified copy of the act referred to, under the hand and seal of the secretary of the territory, as published in the Session Laws of the eighteenth legislative assembly, on pages 68, 69, and 70, signed by the governor, president of the council, and speaker of the house; the affidavits of A. J. Doran, president of the council, J. H. Carpenter, speaker of the house, Charles F. Hoff, clerk of the council, and C. D. Reppy, clerk of the house. In the affidavit of Doran it was alleged, in effect, that it was the custom for him, as president, to sign bills when presented to him by the chairman of the engrossing and enrolling com-

mittee of either house, whether the council was in session or not, and if council was in session there was no formality gone through with, and no notice given that he was about to sign a bill. Carpenter's affidavit was to the same effect, and, further, that he did not read and compare a bill at the time he signed it; that he was certain that said act, when it passed the house, had a clause in it that it should go into effect January 1, 1897. With the affidavits of Hoff and Reppy, as parts thereof, were certain portions of the journals of the council and house, containing the entries therein pertaining to the disposition of said act during its progress through said houses. The court held that the enrolled bill, which had been signed by the presiding officers of the respective houses of the legislative assembly, and approved by the governor, and filed with the secretary of the territory, could not be attacked by any evidence that said act, as it was when lodged with the said secretary, is the law, and the journals of the legislative assembly could not be received as evidence to add anything thereto, or to take anything therefrom; that no evidence of any kind could be received to change or alter said act in any particular. The action is based on the provisions of act No. 51 of the eighteenth legislative assembly of the territory of Arizona, as it appears in the published laws of that session, on pages 68, 69, and 70. Plaintiff was the duly elected and qualified recorder of Cochise County, and, as such recorder, claims possession of the books, records, etc., of the clerk of the board of supervisors of said county, as per the provisions of the third subdivision of section 2 thereof. If said act is valid, Cochise County is a county of the third class, and plaintiff is *ex officio* clerk of the board of supervisors of said county. Said act was first introduced in the house as house bill No. 9. The certified copy of said act offered in evidence by the plaintiff was under the certificate and seal of the secretary of the territory. Said certificate is as follows: "I, Charles M. Bruce, secretary of the territory of Arizona, do hereby certify that the within copy is a true and complete transcript of the house bill No. 9 of the eighteenth legislative assembly of Arizona, filed in this office the 22nd day of March, A. D. 1895, at 4 o'clock P. M., as provided by law. In testimony whereof, I have hereunto set my hand and affixed my official seal. Done at the city of Phœnix this 29th

day of March, 1895. [Seal.] CHARLES M. BRUCE, Secretary of the Territory.'' Appellant contends that there were in house bill No. 9, when it passed both houses of the legislative assembly, two sections, numbered 5 and 6, as parts thereof, but that said sections were omitted from said bill, in the enrollment thereof, before the bill was signed by the presiding officers of the respective houses. The two sections which he claims were omitted were as follows:—

"Sec. 5. All other acts and parts of acts in conflict herewith are hereby repealed.

"Sec. 6. This act shall take effect and be in force from and after January first, 1897.''

In support of said claim he offered in evidence the affidavits of the presiding officers and the chief clerks of both houses of the legislative assembly, and the parts of the journals of said houses pertaining to said bill. Appellant contends that said act is in conflict with the provisions of the act of Congress designated as the "Harrison Act," and for that reason void. The only error complained of by appellant is the ruling of the district court in refusing to receive evidence to explain or alter said act, and the constitutionality of the act. The judgment was for plaintiff, and defendant appeals.

Barnes & Martin, for Appellant.

This law is unconstitutional and void, because in violation of that provision of the so-called Harrison Act which prohibits the passage of local or special laws creating, increasing, or decreasing fees, percentage, or allowances of public officers during the term for which said officers are elected or appointed.

This act, for the purpose of fixing the compensation of officers, divides counties into six classes, based upon the assessment of property.

This classification violates the principle of uniformity, and is void.

Classification by population has been upheld as approximately equal, and so general. But such a classification as this, which affects the people in one part of the territory differently than in others, is local and special. This law makes the county recorder *ex officio* clerk of the board in all but counties of the first class. It therefore legislates the clerks appointed by the boards in all the counties, except three, out

of office. The law allows the board to allow a deputy to the
recorder in some of the counties and in others does not, so
differently affecting those now in office, and hence it is local
and special.

The classification must be reasonable, the objects must be
germane to the legislative purpose, with similar character-
istics and like relations, and if not so, the classification is
incomplete and faulty, and the legislation void. *State* v.
*Trenton,* 42 N. J. L. 486; *State* v. *Parsons,* 40 N. J. L. 11;
*State ex rel. Helfer* v. *Simon,* 53 N. J. L. 550, 22 Atl. 120;
*Earle* v. *Board,* 55 Cal. 489; *State* v. *Trenton,* 54 N. J. L. 444,
24 Atl. 478; *State ex rel. Randolph* v. *Wood,* 49 N. J. L. 88,
7 Atl. 286; Sutherland on Statutory Construction, secs. 127,
128, 129.

George W. Swain, District Attorney, for Appellee.

Wiley E. Jones, *Amicus Curiæ.*

This action questions the validity of Act No. 51 of the
eighteenth legislative assembly, generally known as the
"County Classification Law."

Can an enrolled bill, duly signed by the presiding officers of
both houses of the legislature, approved by the governor, and
deposited in the office of the secretary of the territory, be
impeached by the journals of the legislature or other pur-
ported evidence, as sought by appellant in this case?

It has been well settled in English courts that it is not
competent to go behind the enrolled bill, as the parliament roll
is considered a record of as great dignity as a court of record,
importing absolute verity. 2 Blackstone's Commentaries, 330,
says: "A record or enrollment is a monument of so high a
matter, and importeth in itself such absolute verity, that if it
be pleaded there is no such record, it shall not receive any trial
by witness, jury, or otherwise, but only by itself."

Paragraph 1862 of the Revised Statutes of Arizona adopts
the common-law rule of evidence in the following language:
"The common law of England, as now practiced and under-
stood, shall, in its application to evidence, be followed and
practiced by the courts of this territory, so far as the same
may not be inconsistent with this or any other law."

Paragraph 1867 Id. says: "The printed statute-books of this

territory . . . shall be received as evidence of the acts and resolutions therein contained."

There is no law known to Arizona which recognizes or con-stitutes the journals of either house evidence for any pur-pose.

In the United States, seventeen states of the union and three territories, in their latest decisions, have held that the enrolled bill, duly signed by the presiding officers, approved by the governor, and deposited in the office of the secretary, is conclusive of its passage.

In other states where the journals have been explored by the courts, it was in recognition of an express provision of the constitution of such states which imposed certain restrictions upon the legislature that must be observed and such fact "entered upon the journals."

See *Shuley Co. v. People*, 25 Ill. 163; *Town of South Ottawa v. Perkins*, 24 U. S. 154; *People v. Starne*, 35 Ill. 133, 85 Am. Dec. 348; *Wabash Ry. Co. v. Hughes*, 38 Ill. 186; *Hensoldt v. Petersburg*, 63 Ill. 159; *Larrison v. P. D. and A. Ry. Co.*, 77 Ill. 11; *In re Roberts*, 5 Colo. 535; *Massachusetts Mut. Life Ins. Co. v. Colorado Loan and Trust Co.*, 20 Colo. 6, 36 Pac. 794; *Currie v. Southern Pacific Co.*, 21 Or. 566, 28 Pac. 884; *State v. Rogers*, 22 Or. 348, 30 Pac. 77; *Oakland Paving Co. v. Hilton*, 69 Cal. 479, 11 Pac. 3; *People v. Dunn*, 80 Cal. 211, 13 Am. St. Rep. 118, 22 Pac. 140.

The constitutions of the following states require the votes of each house to be taken on the final passage of every bill and entered on the journals, thereby making them evidence of the passage of laws: Arkansas, California, Colorado, Florida, Idaho, Illinois, Iowa, Kansas, Maryland, Montana, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New York, North Dakota, South Dakota, Ohio, West Virginia, Washington, Wyoming, Ten-nessee.

In Alabama it is held that the validity of the seeming acts may be inquired into; but in its latest decision on the subject the court said: "If a particular thing is required by the con-stitution to be done, but not to be recorded, the mere silence of the journals will not invalidate it." *Hall v. Steele*, 82 Ala. 562, 2 South, 650.

This court held that the journals were not evidence of pas-

sage in the absence of the enrolled act. *Graves* v. *Alsap,* 1 Ariz. 276, 25 Pac. 836.

In Arkansas the journals control the enrolled act. *Glidewell* v. *Martin,* 51 Ark. 559, 11 South, 882. It is noticeable that in this case, the latest decision in that state, the judges delivering the opinion intimate a wish that the English rule was in force, and the enrolled act conclusive.

In California the rulings have been various. In *Fowler* v. *Pierce,* 2 Cal. 165, the court permitted oral evidence to be introduced to show that an act was approved by the governor after adjournment. This case was overruled in *Sherman* v. *Story,* 30 Cal. 253, 89 Am. Dec. 93, where it was held that the enrolled act could not be impeached by the journals. This was followed in *People* v. *Burt,* 43 Cal. 560. After these two cases were decided, a new constitution was adopted in California, under which the journals have been examined to impeach the enrolled bill. *County of San Mateo* v. *Southern Pacific Ry.,* 8 Saw. 238, 13 Fed. 722; *Weil* v. *Kenfield,* 54 Cal. 111; *Oakland Paving Co.* v. *Hilton,* 69 Cal. 479, 11 Pac. 3; *People* v. *Dunn,* 80 Cal. 211, 13 Am. St. Rep. 118, 22 Pac. 140.

In Connecticut the journals cannot be used to impeach the recorded act. *Eld* v. *Gorham,* 20 Conn. 8.

In *Dakota Territory* v. *O'Connor,* 5 Dak. 397, 41 N. W. 746, it was held that the signatures of the presiding officers to the passage of the enrolled bill is conclusive in the silence of the journals. (The question of a conflict between the enrolled act and the journals was not considered.)

In Delaware we are not aware of any case on the subject, nor in Georgia, although the court in the latter state has said: "No evidence except the journals is competent to show a failure to comply with the constitution." *Speer* v. *City of Athens,* 85 Ga. 49, 11 S. E. 802.

In Illinois the journals control in any conflict between them and the enrolled acts as to the validity thereof. *Spangler* v. *Jacoby,* 14 Ill. 297, 58 Am. Dec. 571; *Turley* v. *Logan County,* 17 Ill. 151; *People* v. *Hatch,* 19 Ill. 283; *Prescott* v. *Illinois etc. Canal Trustees,* 19 Ill. 324; *Schuyler County* v. *People,* 25 Ill. 181; *People* v. *Starne,* 35 Ill. 121, 85 Am. Dec. 348; *Wabash etc. R. R. Co.* v. *Hughes,* 38 Ill. 174.

In Indiana now the journals do not control the enrolled act. Formerly they were consulted for the purpose of impeaching

the act. The journals were referred to in *Skinner* v. *Deming,* 2 Ind. 558, 54 Am. Dec. 463; *Coleman* v. *Dobbing,* 8 Ind. 156; *McCulloch* v. *State,* 11 Ind. 424; *Coburn* v. *Dodd,* 14 Ind. 347. The rule was changed, and the enrolled act held conclusive of its passage. *Evans* v. *Browne,* 30 Ind. 514, 95 Am. Dec. 710; *Bender* v. *State,* 53 Ind. 254; *Edgar* v. *Board of Commissioners,* 70 Ind. 331; *State* v. *Denny,* 118 Ind. 382, 21 N. E. 252.

In Iowa the enrolled act in the secretary's office is held to be the ultimate proof of the law. *Clare* v. *State,* 5 Iowa, 510; *Duncombe* v. *Prindle,* 12 Iowa, 1. Where the validity of a constitutional amendment was in question, different provisions of the constitution apply. It was held that the journals could be consulted. *Koehler* v. *Hill,* 60 Iowa, 543, 14 N. W. 738, 15 N. W. 609.

In Kentucky the question has not been squarely decided whether the journals in a conflict would overcome the presumption of the enrolled act, but the intimation of the court is that it would. *Commissioners* v. *Jackson,* 5 Bush, 680; *Auditor* v. *Haycroft,* 14 Bush, 284.

In Louisiana it is held that the enrolled act is conclusive. *Louisiana State Lottery Co.* v. *Richoux,* 23 La. Ann. 743, 8 Am. Rep. 602; *Whited* v. *Lewis,* 25 La. Ann. 568.

In Maine the enrolled act is held to be the best evidence, and not to be overcome by the journals where its record is complete. *Weeks* v. *Smith,* 81 Me. 538, 18 Atl. 325.

In Maryland the enrolled act was first held to be conclusive. Afterwards the decisions are that it may be impeached by the journals. The first series of cases is *Fouke* v. *Fleming,* 13 Md. 392; *Mayor of Annapolis* v. *Harwood,* 32 Md. 471, 3 Am. Rep. 161.

Under the new constitution controlling the legislature in its acts, the following cases held that the enrolled act might be impeached by the journals and other evidence: *Berry* v. *Railroad Co.,* 41 Md. 446, 20 Am. Rep. 69; *Legg* v. *Annapolis,* 42 Md. 203; *Strauss* v. *Heiss,* 48 Md. 292.

In Michigan, in certain cases, the journals may be inspected, but "Courts cannot act on anything not found in the journals, and presume a (constitutional) requirement has been omitted unless such fact affirmatively appears in the journals." *People* v. *McElroy,* 72 Mich. 446, 4 N. W. 750.

In Mississippi the enrolled act is held conclusive. In one

case a different rule was laid down—namely, in the case of *Brady* v. *West*, 50 Miss. 68. The case was overruled. The following cases hold the law conclusive: *Green* v. *Weller*, 32 Miss. 650; *Green* v. *Weller*, 33 Miss. 735; *Swann* v. *Buck*, 40 Miss. 268; *Ex parte Wren*, 63 Miss. 512, 56 Am. Rep. 825.

In Missouri the enrolled act was at first held conclusive, though where an amendment to the constitution was in question the journals were consulted. *State* v. *McBride*, 4 Mo. 303, 29 Am. Dec. 636. The following case held the enrolled act to be conclusive. *Pacific R. R. Co.* v. *Governor*, 23 Mo. 353, 66 Am. Dec. 673. Upon the change in the constitution the legislative journals have been allowed to impeach the recorded act. *Bradley* v. *West*, 60 Mo. 33; *State* v. *Meade*, 71 Mo. 266.

In Nebraska the journals were explored in the earlier cases, but in the last decision in that state the court said: "We do not understand that as to the mere routine of parliamentary business courts are required to interfere with legislative proceedings where no substantial requirement of the constitution has been violated. The signatures of the officers of the respective branches of the legislature attesting the due passage of the bill in question precludes an inquiry in that direction." *State* v. *Moore*, 37 Neb. 13, 55 N. W. 299.

In Nevada the enrolled act is held conclusive. *State* v. *Swift*, 10 Nev. 176, 21 Am. Rep. 721; *State* v. *Rogers*, 10 Nev. 250, 21 Am. Rep. 738; *State* v. *Glenn*, 18 Nev. 34, 1 Pac. 186. In *State* v. *Tufly*, 19 Nev. 391, 3 Am. St. Rep. 895, where the constitution required an amendment to be entered in full on the journals, an amendment was held invalid because that requirement was not complied with.

In New Hampshire the enrolled act is controlled by the journals. Opinions of the justices, 35 N. H. 579, 45 N. H. 607, 52 N. H. 622. These were mere opinions by the request of the legislature, and were not judicial decisions in any litigated case contesting the validity of a law.

In New Jersey the enrolled act is held the most appropriate evidence of law, and is not overcome by inconsistent entries in the journals. *Pangborn* v. *Young*, 32 N. J. L. 29; *Freeholders of Passaic County* v. *Stevenson*, 46 N. J. L. 173; *Standard Underground Cable Co.* v. *Attorney-General*, 46 N. J. Eq. 270, 19 Am. St. Rep. 394, 19 Atl. 733.

In New Mexico the enrolled act cannot be impeached by an

inspection of the journals. *Chaves* v. *Luna,* 5 New M. 183, 21
Pac. 346; *Lyons* v. *Woods,* 5 New M. 327, 21 Pac. 350.

In New York the Revised Statutes provided that the secre-
tary of state should receive the enrolled act, and should in-
dorse upon it the day, month, and year when the same became
a law, and that his certificate should be conclusive of the facts
stated therein. There was also a provision that no bill should
be deemed to have passed by the assent of two thirds of the
members, unless the fact was certified by the presiding officer
of each house. The question arose in a number of cases
whether certain acts had been passed which were acts of in-
corporation and which were required by the constitution of
New York to be adopted by a two-thirds vote. It was held
that for the purpose of ascertaining the vote recourse might
be had to the original enrolled act on file in the secretary of
state's office, and that the absence of the certificate of the
presiding officers to a two-thirds vote avoided the act. *Thomas* .
v. *Dakin,* 22 Wend. 9; *Warner* v. *Beers,* 23 Wend. 103; *Hunt*
v. *Van Alstyne,* 25 Wend. 603; *People* v. *Purdy,* 2 Hill, 31;
*Purdy* v. *People,* 4 Hill, 384; *De Bow* v. *People,* 1 Denio, 9;
*Commercial Bank of Buffalo* v. *Sparrow,* 2 Denio, 97. It was
stated by one or two judges in a semble that the journals also
might be examined, but these *dicta* have not been followed.
The present law in New York is, that the journals cannot be
examined to determine whether an act has been passed by
the requisite vote. *People* v. *Chenango County Supervisors,*
8 N. Y. 317; *People* v. *Devlin,* 33 N. Y. 269, 88 Am. Dec. 377;
*People* v. *Commissioners,* 54 N. Y. 276, 13 Am. Rep. 581. In
the case of *People* v. *Petrea,* 92 N. Y. 128, where the constitu-
tion required that all acts to be valid must be reported by a
commission, it was held that the journal might be resorted to
to show that the act was not reported by the commission. This
view grew out of a peculiar provision of the constitution, and
does not take New York out of the line of those states which
hold that the enrolled act cannot be impeached by the journals.

In North Carolina it is held that the enrolled act is con-
clusive  *Brodnax* v. *Groom,* 64 N. C. 244; *State* v. *Robinson,*
81 N. C. 409.

In Rhode Island the enrolled act is conclusive. "It is suffi-
cient to establish the existence of a public law to find it in
the records of the state. . . . An act will not be declared void

because the general assembly did not conform to another law in passing it." *State* v. *Septon,* 3 R. I. 119.

In South Carolina formerly the journals were permitted to control the presumption from the enrolled act, but all former decisions have been overruled by *State* v. *Town of Chester,* 39 S. C. 307, 17 S. E. 753. The enrolled act is held conclusive in the latest decisions in this state.

In Tennessee the enrolled act is conclusive if it is "signed by the speaker in open session and the fact is recorded. The journal need not show it received a constitutional majority on its passage." *Williams* v. *State,* 6 Lea, (Tenn.) 549.

In Texas the enrolled act is held to be the best evidence, and is not controlled by the journals. *Central Pacific Ry. Co.* v. *Hearne,* 32 Tex. 546; *Blessing* v. *Galveston,* 42 Tex. 641; *R. W. Co.* v. *Odum,* 53 Tex. 343; *Day Land and Cattle Co.* v. *State,* 68 Tex. 526, 4 S. W. 865; *Usener* v. *State,* 8 Tex. App. 177; *Hunt* v. *State,* 22 Tex. App. 396, 3 S. W. 233; *Ex parte Tipton,* 28 Tex. App. 438, 13 S. W. 610. In *Hunt* v. *State, supra,* the journals were examined, but *Ex parte Tipton* overrules that case, and restores to authority *Usener* v. *State,* which held the enrolled act conclusive.

In Utah the enrolled act was held conclusive. *Territory* v. *Clayton,* 5 Utah, 598, 18 Pac. 632.

In Virginia the enrolled act is not conclusive, and the journals are permitted to control the presumption therefrom. *Wise* v. *Biggar,* 79 Va. 269.

In Washington the enrolled act is conclusive. *State* v. *Jones,* 6 Wash. 452, 34 Pac. 201.

The United States supreme court has never gone behind the enrolled bill and examined the journals of Congress to impeach the bill. It has sustained the decisions of Illinois in the cases where the state has interpreted its own constitution. *Town of South Ottawa* v. *Perkins,* 24 U. S. 154.

In *Gardner* v. *Collector,* 73 U. S. 499, the United States supreme court simply examined the journals, not to impeach the enrolled bill, but for the purpose of ascertaining the date of its approval, and thereby aid the court in giving it full effect.

In *Town of Walnut* v. *Wade,* 103 U. S. 683, the court simply followed *Town of South Ottawa* v. *Perkins,* and sustained the supreme court of Illinois.

In *Lyon* v. *Woods,* appealed from New Mexico, and cited previously, the United States supreme court sustained the supreme court of New Mexico, and refused to examine the journals to impeach the enrolled act. *Lyon* v. *Woods,* 153 U. S. 649, 14 Sup. Ct. Rep. 959.

In *Field* v. *Clark,* 143 U. S. 649, 12 Sup. Ct. Rep. 495, the supreme court upheld the validity of the "McKinley Bill," wherein a section of the law passed was alleged to have been omitted in the enrolled act (the same as alleged in this case).

The Harrison Act does not prevent a decrease of official salaries during the term of office, nor does it prevent an office during a term from being abolished altogether. It merely says that, if done at all, it must be done by a general law.

The Classification Law is a general law classifying the twelve counties into six classes. The following authorities fully sustain such classification: *Longan* v. *County of Solano,* 65 Cal. 122, 3 Pac. 462; *State* v. *Graham,* 16 Neb. 74, 19 N. W. 470; *State* v. *Hunter,* 38 Kan. 578, 17 Pac. 177; *Cody* v. *Murphy,* 89 Cal. 522, 26 Pac. 1081; *In re Pittsburg,* 138 Pa. St. 401, 21 Atl. 757, 759, 761; *Knickerbocker* v. *People,* 102 Ill. 229; *People* v. *Henshaw,* 76 Cal. 436, 18 Pac. 413; *Koester* v. *Commissioners,* 44 Kan. 141, 24 Pac. 65; *Brooks* v. *Hyde,* 37 Cal. 376; *Wheeler* v. *Philadelphia,* 77 Pa. St. 348; *Kilgore* v. *Magee,* 85 Pa. St. 401; *Hymes* v. *Aydelott,* 26 Ind. 431; *Chicago Ry. Co.* v. *Iowa,* 94 U. S. 155; *McAunich* v. *Railroad Co.,* 20 Iowa, 343; *Board* v. *Leahy,* 24 Kan. 65; *State* v. *Pond,* 93 Mo. 606, 6 S. W. 469; *Marmet* v. *State,* 45 Ohio St. 63, 12 N. E. 463; *State* v. *Berka,* 20 Neb. 375, 30 N. W. 267, and many others.

ROUSE, J. (after stating the facts).—This action, though entitled a proceeding in *mandamus,* was in fact an action for an office by plaintiff, in his own right, as provided by title 62 of the Revised Statutes, entitled "Usurpation of Office." No question having been raised in the district court or in this court as to the form of the action, we will consider it only on the record before us.

The action is based on the provisions of act No. 51 of the eighteenth legislative assembly of the territory of Arizona, as it appears in the published laws of that session, on pages 68, 69, and 70. Plaintiff was the duly elected and qualified re-

corder of Cochise County, and, as such recorder, claims possession of the books, records, etc., of the board of supervisors of said county, as per the provisions of the third subdivision of section 2 of the act last mentioned. Cochise County is a county of the third class, as established by said act; and by said subdivision plaintiff is *ex officio* clerk of the board of supervisors of said county. In said subdivision is the following: "Third. . . . The county recorder shall be *ex officio* clerk of the board of supervisors . . ." Said act was first introduced in the house as house bill No. 9. The plaintiff offered in evidence a certified copy of said bill. The certificate attached thereto is as follows: "I, Charles M. Bruce, secretary of the territory of Arizona, do hereby certify that the within copy is a true and complete transcript of the house bill No. 9 of the eighteenth legislative assembly of the territory of Arizona, filed in this office the 22nd day of March, A. D. 1895, at 4 o'clock P. M., as provided by law. . . ." The said certified copy of the act is the same as act No. 51, published on pages 68, 69, and 70 of the Session Laws of the eighteenth legislative assembly of the territory of Arizona. The defendant contends that when said bill passed the respective houses of the legislative assembly it had two sections (viz., sections 5 and 6) more than are in the said certified copy of said act; that said sections were omitted or stricken from the engrossed bill after the bill was passed, and before it was enrolled, and signed by the presiding officers of the two houses, and the governor. And the evidence offered by him was for the purpose of establishing that fact.

It is admitted by the counsel for defendant that the introduction of the copy of the act certified to by the secretary of the territory, as evidence, was proper, as per paragraphs 1867-1870 of the Revised Statutes of Arizona, but he contends that the journals of the respective houses of the legislative assembly may be received to show that said act is not correct. It is admitted that said certified copy is printed in the acts of the eighteenth legislative assembly. Paragraph 1867, *supra*, is as follows: "The printed statute-books of this territory, . . . shall be received as evidence of the acts . . . therein contained." It is provided in paragraph 1868: "A certified copy under the hand and seal of the secretary of the territory of any act . . . deposited in his office, in accord-

ance with law, shall be received as evidence thereof.'' Paragraphs 1869 and 1870 contain similar provisions. By the provisions of the foregoing paragraphs, it is clear that the certified copy of the act referred to must be received as evidence, and its provisions cannot be added to nor taken from, unless the said paragraphs are in conflict with the provisions of the constitution of the United States, or of the acts of Congress. Said paragraphs cannot be in conflict with said constitution and the acts of Congress, unless the constitution and the acts of Congress make the journals of the legislative assembly evidence of that nature that acts of said assembly may be shown to be different from the acts which have been enrolled and signed, and deposited with the secretary of the territory. By section 1844 of the Revised Statutes of the United States it is provided: ''The secretary shall record and preserve all the laws and proceedings of the legislative assembly, and all the acts and proceedings of the governor in the executive department; he shall transmit one copy of the laws and journals of the legislative assembly. . . . He shall prepare the acts passed by the legislative assembly for publication and furnish a copy thereof to the public printer of the territory within ten days after the passage of such act.'' The officer mentioned in the statute just quoted is the secretary of the territory,—an officer appointed by the President of the United States, and one on whom, by said statute, certain official duties are imposed. It is thereby made his duty to record and preserve the laws of the legislative assembly, and to prepare the acts (laws) for publication, and to furnish copies thereof for publication. From him alone can the acts be received and published. The laws of the territory are therefore committed to his keeping, and from him, and in no other way, can they be received for publication, and be published by authority. By an act of Congress approved July 19, 1876, (1 Supp. Rev. Stats. U. S., p. 230, c. 212,) it is provided ''that every bill which shall have passed the legislative council and house of representatives of the territory of Arizona shall, before it becomes a law, be presented to the governor of the territory; if he approve it, he shall sign it; but if he do not approve it, he shall return it, with his objections, to the house in which it originated, who shall enter the objections at large upon their journal, and proceed to reconsider

it. If, after such consideration, two thirds of that house shall pass the bill, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if approved by two thirds of that house it shall become a law, the governor's objections to the contrary notwithstanding; but in such case the votes of both houses shall be determined by yeas and nays, and be entered upon the journals of each house respectively. . . .'' By said act of Congress, it is provided that every bill which shall have passed the legislative assembly shall, before it becomes a law, be presented to the governor. If he approves it, he must sign it. When signed by the governor, it is a law, and then it must be recorded, and preserved by the secretary, and published, etc., as specified in section 1844 of the Revised Statutes of the United States, *supra.* If a document purporting to be an act of the legislative assembly be presented to the secretary of the territory, having upon it the signature of the governor, and purporting to have been approved and signed by him as a law, the secretary may treat it as a law, and cannot resort to any other means to determine whether it is a law or not. The act under consideration is such a document. It is not necessary for us to determine what would be the duty of the said secretary in case such a document had not been approved by the governor when presented to him, and had been returned by him to the house in which it originated, with his objections. If the journals of the legislative assembly can be received in evidence, it is certain that they can be received as evidence only in cases where the bill has been returned by the governor to the house in which it originated, without his approval.

Counsel for appellant contends that certain paragraphs of chapter 4 of title 60 of Revised Statutes of Arizona make the journals of the legislative assembly evidence in this case. We have carefully examined that statute, and find nothing therein to warrant such a conclusion. That statute contains provisions directing the mode of procedure of the legislative assembly, but it contains no provisions differing materially from those contained in the acts of Congress heretofore quoted.

The courts of many of the states have decided that the journals of the legislative assemblies are proper evidence in cases similar to the one before us, while the opposite has been held by the courts of about an equal number of states. As a

rule, the courts that have held that the journals are evidence base their decisions upon the provisions of the constitutions of their respective states, and it will be observed that those provisions differ materially from the congressional acts herein cited. The acts of Congress with reference to the territories are to the territories what the constitutions are to the states. The act of Congress as to the journals, referred to, is nearly identical with the provisions of article 1, section 5, of the constitution of the United States. The supreme court of the United States, in the case of *Field* v. *Clark,*—a case possessing facts nearly identical with the facts in this case,—decided that the signing by the speaker of the house of representatives and by the president of the senate, in open session, of an enrolled bill, is an official attestation by the two houses of such bill as one that has passed Congress, and when the bill, thus attested, receives the approval of the President, and is deposited in the department of state according to law, its authentication as a bill that has passed Congress is complete and unimpeachable; that it is not competent to show from the journals of either house of Congress that an act so authenticated, approved, and deposited did not pass in the precise form in which it was signed by the presiding officers of the two houses, and approved by the President. *Field* v. *Clark,* 143 U. S. 649, 12 Sup. Ct. Rep. 495.

The question involved in this case is as to the evidence that can be introduced with reference to a bill which has passed the legislative assembly, been signed by the presiding officers of the respective houses, approved and signed by the governor, and deposited with and recorded by the secretary of the territory according to law. No question can be raised in this case with reference to a bill which had not been passed, and authenticated by the signatures of the presiding officers of the respective houses of the legislative assembly, and by the governor. A bill of that character would not become a law by any acts of the secretary of the territory. His acts are simply ministerial, with reference to all the duties required of him by the said acts of Congress, *supra.*

The only contention of the appellant in this case is, that the enrolled bill, when signed by the presiding officers and approved by the governor, had not all the parts which it had when it passed the respective houses of the legislative as-

sembly, and he contends that the journals of the respective houses are evidence in this case. The acts of Congress and the statute of Arizona referred to expressly require that certain matters shall be entered upon the journals. We need not determine what would be the effect of a failure to comply with said requirements. No such question is before us. As to matters not expressly required to be entered in the journals, they are left to the discretion of the legislative assembly. We are not advised of any rule of said legislative assembly, or either house thereof, requiring the entry of bills in full on the journals, or of the entry of amendments thereto in full on the journals. Unless the bill in question was spread upon the journals in full at the time it passed, it would not be possible to determine by the journals whether the enrolled bill was the same as the engrossed bill or not. The journals, therefore, would not be sufficient to prove the facts contended for by appellant, or to prove any fact contended for, without the aid of parol evidence. The journals of a legislative assembly, as a rule, are made up of short minute entries, framed by the clerk, in language chosen by him, without time for deliberation, which, in his judgment, he believes sufficient to express what was done. Bills and amendments thereto are usually mentioned in the journals, and noted therein, by their title and numbers. The journals, in the nature of things, must be constructed out of loose and hasty memoranda made often in the pressure of business. In the main they are kept for the benefit of the members of the body, to aid them in the discharge of their legislative duties, and that the public may be informed of the acts of the individual members. 1 Story on the Constitution, secs. 840, 841. In *Pangborn* v. *Young*, 32 N. J. L. 29, 37, it is said: "Can any one deny that if the laws are to be tested by a comparison with these journals, so imperfect, so unauthenticated, that the stability of all written law will be shaken to its very foundation? In judging of consequences, it is scarcely too much to say that the legal existence of almost every legislative act would be at the mercy of all persons having access to these journals; for it is obvious that any law can be invalidated by the interpolation of a few lines, or the obliteration of one name and the substitution of another in its stead." For a court to permit evidence to impeach an act which purports to

have passed the legislative assembly, attested by the signatures of the presiding officers of the respective houses thereof, approved and signed by the governor, and deposited with the officer who by law is the custodian thereof, without authority by constitutional provisions clearly expressed, would be to destroy the independence of one of the three co-ordinate branches of our government, and make the legislative department subordinate to the judicial. *Ex parte Wren,* 63 Miss. 512, 56 Am. Rep. 825.

The only other question presented is as to the constitutionality of said act. Appellant contends that it is in conflict with the provisions of the act of Congress commonly called the "Harrison Act," and for that reason void. Said act of Congress contains, among other provisions, the following, viz.: "That the legislatures of the territories of the United States . . . shall not pass local or special laws in any of the following enumerated cases, that is to say: Granting divorces. Changing the names of persons or places. Laying out, opening, altering, and working roads or highways. . . . Regulating county and township affairs. Regulating the practice in courts of justice. . . . For the punishment of crimes or misdemeanors. . . . Regulating the rate of interest on money. . . . Creating, increasing, or decreasing fees, percentage, or allowances of public officers during the term for which said officers are elected or appointed. . . ." 24 Stats. 170. The contention is that it is in conflict with the last sentence quoted, viz., "Creating, increasing, or decreasing fees, percentage," etc. Before the act under consideration was passed, the counties of the territory were divided into three classes,—viz., first, second, and third. Said classification was based upon the number of registered voters. All counties having a certain number of voters were counties of the first class; counties having a less number of voters than what was required for a first-class county, and more than a certain designated number, were counties of the second class; and counties having a less number of voters than the number required to make a county of the second class were of the third class. During the existence of such classification, laws were enacted fixing the fees and salaries of county officers according to the said classification. As a rule, an officer of a first-class county received more than an officer of the second class, and an officer

of the second-class counties more than one of the third class.
The officers of counties of one class received the same com-
pensation,—i. e. a sheriff of one first-class county received the
same compensation which was allowed the sheriffs of all other
first-class counties.   The act in question changed the mode
of classification from the number of registered voters to the
assessed valuation of the property within the counties.   By
it, counties having the greatest amount of property are made
first-class counties.   Under this act the counties of the terri-
tory are divided into six classes, and the fees and compensa-
tion of the officers of each class are uniform throughout, just
as they were under the former classification.   The purpose of
said act of Congress is to prevent special legislation.   The act
under consideration is not such legislation.   The judgment of
the district court is affirmed.

Hawkins, J., concurs.

BAKER, C. J., concurring.—The great importance of the
questions involved in this appeal must serve as an apology
for outlining my views.   The delicate equipoise existing be-
tween the judiciary and the legislative departments of the
government, if not the integrity of the latter, and the sta-
bility of the whole body of our statute laws, are fairly within
the issues presented, and in such a case it must be permissible
to urge every sound reason in support of the final conclusion.

The point is, Can the journals of the legislature be intro-
duced in evidence to contradict or nullify the enrolled bill?
In other words, Is this the bill as it passed the legislature?
The duty of the courts to pronounce an act void which is
repugnant to the constitution must not be confounded with
this inquiry.   For more than a hundred years the courts of
this country have not hesitated to declare an act of the legis-
lature void when clearly in conflict with the fundamental
law.   1 Kent's Commentaries, 450.   And this duty does not
involve any conflict between the courts and the legislature,
for it is only securing to each kind of law its due authority.
The conflict is really between the different kinds of law,—the
constitution and the statute.   Nor does the exercise of this
function show that the judicial power is superior in dignity
to the legislative.   Cooley on Constitutional Limitations, 195.
Manifestly, the legislature cannot settle the question of the

constitutionality of a statute, because it is a party interested, and must of necessity decide in its own favor. The method of determination pursued by the courts is to put the statute alongside the constitution, and the final determination is made upon the face of the two instruments. Now, the contention here is not that the bill is in conflict with some provision of the constitution, but it is that it never passed the legislature in its present form; that two material sections are omitted from the act, one of which postpones its effect until January, 1897. The proposition is to prove such omission by the journal entries. It may be conceded that to decide whether or not the journals of the legislature may be explored to determine whether or not the act passed the legislature is to declare a rule of evidence. This being so, the argument is pressed that the undisputed facts in the case show that this is not the bill passed by the legislature, and that the omissions referred to actually occurred. The parties agreed to this,—agreed that certain affidavits and exhibits attached (copies of journal entries) should be considered in evidence; and these clearly show the omission. Counsel for appellant then proceeds to argue: "The facts show that this bill was never before either house at all,—was never passed by either house,—but after a bill had passed both houses an entirely different bill was made up by some clerk of a committee and handed to the governor to sign. The bill handed to the governor is not an enrolled copy of the bill which had passed the house, hence the bill never passed at all. Here is the question presented, and here is the issue." It is plainly to be seen that this gives the question the slip. By what authority is the admission made? Who is to defend the legislature when a private litigant is suffered to admit that it stultified itself? I will never consent that suitors may stipulate the invalidity of a statute. If the journals themselves are inadmissible to contradict the law, the admissions of the parties are equally so. If the journals are incompetent evidence, the admissions will not make them competent, and the case must be decided as if the journals were offered in evidence, and objected to in due time as incompetent. Mr. Justice Cooley declares that the courts will not act upon the admissions of parties that a bill was not passed in accordance with the constitution. Cooley on Constitutional Limitations, 163.

But to the exact point: At common law an authenticated act of parliament was conclusive and unimpeachable. "And it cannot be altered, amended, dispensed with, suspended, or repealed, but in the same forms and by the same authority of parliament; for it is a maxim in law that it requires the same strength to dissolve as to create an obligation." 1 Blackstone's Commentaries, 185, 186. "The journal is of good use for the intercourse between the two houses, and the like. When the act is passed, the journal is expired. The journals of parliament are not records, and cannot weaken or control a statute, which is a record, and to be tried only by itself." *Rex* v. *Arundel,* (Trinity Term) 14 Jac. Hob. 109-111. Lord Coke declared: "A record or enrollment is a monument of so high a matter, and importeth in itself such absolute verity, that, if it be pleaded there is no such record, it shall not receive trial by witnesses, jury, or otherwise, but only by itself." 2 Blackstone's Commentaries, 330. "The secretary [territories] shall record and preserve all the laws and proceedings of the legislative assembly," etc. Rev. Stats. U. S., sec. 1844. Thus, by an express statute, the acts of the legislature become a "matter of record," in a permanent and lasting form. It cannot be successfully denied but that the rule announced by these ancient authorities is the same as is understood and practiced in the English courts to-day. "The common law of England as now practiced and understood, shall, in its application to evidence, be followed and practiced by the courts of this territory, so far as the same may not be inconsistent with this act, or any other law." Rev. Stats. Ariz., par. 1862. So it may be fairly claimed that the English rule is established by statute. I am inclined also to view the effort to introduce the journal entries in this case as collateral attack upon a high record, which cannot be sustained by proof *aliunde. Brodnax* v. *Groom,* 64 N. C. 244. That a solemn record may not be assailed by evidence outside of itself is a universal doctrine in our jurisprudence. So stringent is the rule that it is not allowable to introduce a minute entry of the same court to show that a judgment was set aside. The court said: "There is no doubt of the competent power in the court to make such a rule, but the question is whether the entry of such a rule upon the minutes is to be received as evidence against the record. It appears contrary

to all well-settled technical rules upon the subject to give the entry that effect. A record imports verity, and can only be tried by itself." *Croswell* v. *Byrnes,* 9 Johns. 290. "The minute entry may be used to correct the judgment, but not to contradict it." *Hahn* v. *Kelly,* 34 Cal. 423. It cannot be well argued that the journal entries of a legislature, in their relationship to the bill, are superior to the minute entries of a court, in their relationship to the judgment. Besides, it may be inferred by the direction to keep a journal (Rev. Stats. Ariz., par. 2895) that its use is to be for the information of the legislative body alone. *Board* v. *Stevenson,* 46 N. J. L. 173; *Rex* v. *Arundel, supra.* The decisions in other jurisdictions greatly vary. In numbers, merely, they may preponderate in favor of the rule which accepts the journal entries in evidence. But many of these cases are inapplicable to the case at bar. They have been decided generally upon some mandatory provision of the state constitution, requiring the evidence of a compliance with the mandate to be "entered" in the journals. Thus a reason is given for the case. All such cases may be safely laid aside in this matter, for no constitutional provision is in issue, except the general requirement that all laws shall be enacted by the legislature. "An opinion in a particular case, founded on special circumstance, is not applicable to cases under circumstances essentially different." *Brooks* v. *Marbury,* 11 Wheat. 90. Besides, we ought not to be influenced so much by the mere numerical array which can be paraded for either side, as by the sound principles of law and just reasoning which may be embodied in the cases. It may be well to observe, also, that in the jurisdictions holding the journal entries admissible the tendency is to recede from the position. In *Glidewell* v. *Martin,* 51 Ark. 559, 11 S. W. 882, Mr. Justice Sandels says, "The courts are gravitating towards the English rule,"— as much may be understood from *People* v. *Starne,* 35 Ill. 136. From the number of cases supporting the stand taken by this court, I will cite but a few in addition to those noted in the main opinion, and this is done because of the sound reasoning upon which they are based: *State* v. *Jones,* 6 Wash. 452, 34 Pac. 201; *Territory* v. *Clayton,* 5 Utah, 598, 18 Pac. 628; *Carr* v. *Coke,* 116 N. C. 223, 47 Am. St. Rep. 801, 22 S. E. 16. Is not there too much dynamite in the proposition

which admits the journals in evidence to contradict the en-
rolled bills? Is not every statutory right—rights independent
of the common law, and out of which have grown valuable
title, etc.—endangered when other evidence than the enrolled
bill is presented to show that it is not the law? All of the
laws upon our statute-book come from enrolled bills. Pun-
ishments, even of death sentence and life imprisonment, have
been passed under them. If these statutes are to be ques-
tioned, and forsooth overthrown, in instances, by the loosely
kept and fragmentary journals, who is so blind as not to see
the result. The United States supreme court declared: "We
cannot be unmindful of the consequences that must result if
this court feel obliged to declare an enrolled bill, on which
depends public and private interests of vast magnitude, which
has been duly authenticated by the presiding officers, and de-
posited in the archives as an act of Congress, was not in fact
passed, and therefore did not become a law." *Field* v. *Clark*,
143 U. S. 649, 12 Sup. Ct. Rep. 495. Judge Black, in an
opinion given upon a similar question, said: "I fear to turn
loose a principle which might devour the whole statute-book."
Op. Attys.-Gen. U. S. Again, it must be conceded that the
different courts, in determining the question, would come to
different conclusions,—one holding that the statute was a
law, and another holding that it was not the law. What utter
confusion would arise! All are presumed to know the law,—
are held to know the law; but, if their knowledge be made to
depend upon the varying decisions necessarily arising from
contradictory records and hastily prepared journals, the re-
quirement will involve endless confusion and hardship. *State*
v. *Boyce*, 140 Ind. 506, 39 N. E. 64, 40 N. E. 113. The clear-
cut issue here is one of power,—of jurisdiction. The powers
of the legislative and judicial departments are not merely
equal. They are exclusive in respect to the duties assigned
to each. They are absolutely independent of each other.
Each, within its sphere, is hedged about with the divinity of
sovereignty. "The difference between the departments is
that the legislature makes, and the executive executes, and
the judiciary construes the law." Chief Justice Marshall, in
*Wayman* v. *Southard*, 10 Wheat. 46. " 'Judge-made law'
may be judicial tyranny. The invasion of the province of the
one by the other is wholly unwarranted. The legislative and

judicial are co-ordinate departments of the government, of equal dignity. Each is alike supreme in the exercise of its proper functions, and cannot, directly or indirectly, while acting within the limits of its authority, be subject to the control or supervision of the other without an unwarrantable assumption by that other of power which, by the constitution, is not conferred on it.'' Judge Cooley, in *People* v. *Governor,* 29 Mich. 320, 18 Am. Rep. 89; Cooley on Constitutional Limitations, 159. In the sense of the separate and distinct functions of these two powers, the power to make the laws carries with it the power to declare what has been done in that respect; otherwise the grant is a mockery.

> "That palter with us in a double sense;
> That keep the word of promise to our ear,
> And break it to our hope."

To look into the journals, and give them controlling effect, is nothing less than to supervise the making of the laws. It is an indirect, but nevertheless an effective, way of doing it. And, once set in motion, where would the power end? Suppose the engrossing committee were about to insert a clause in the bill that was never enacted, and the journal clerks were about to record it; would an injunction issue to prevent the wrong? It is not so clear why this would not be done, if these entries could be subsequently considered, and given the effect of controlling the bill. Every one must see that such a course would necessarily lead to collisions between the legislative and judicial departments dangerous to the well-being of the whole body politic. It is better—safer—to mark the point where the courts are requested to consider and weigh the formulæ by which a bill is enacted, with a view to test the existence of the law itself, as the further limit of judicial power. This rule respects the distinctions existing between the two powers, and accords to the enrolled bill its just due, as being a certain and fixed test, and the highest evidence, of what the legislature has done. It is true that, under the rule announced by the decision, some forger may, for a brief while, play the rôle of a lawmaker, but that is a less evil than to turn loose in the legislative halls an unbitted and unbridled power of supervision. The succeeding legislature can undo the villainy of the forger, and, if he is caught red-handed, he can be dealt with as a criminal.