State, *ex rel.* Board of Commissioners of Benton Co., *v.* Boice *et al.*

◆

## No. 17,301.

## THE STATE, EX REL. THE BOARD OF COMMISSIONERS OF BENTON COUNTY, *v.* BOICE ET AL.

FEES AND SALARIES.—*Act of 1891.*—*Omission to Provide Compensation for the Treasurer of One County.*—*Effect of.*—*Constitutional Law.*—*Local Laws.*—*Laws Not of Uniform Operation Throughout the State.*—An act of March 9, 1891 (Acts 1891, p. 424), attempting to create a system of fees and salaries for county offices and officers, including treasurers, but omitting to provide any compensation, either by way of fees or salary, for the treasurer of one county, is void in so far as it relates to the office of county treasurer, as being in contravention of the provisions of sections 22 and 23 of article 4 of the constitution, inhibiting local laws and requiring fee and salary laws to be general and "of uniform operation throughout the State."

SAME.—*Attempted Amendment of Void Law.*—The act of February 25, 1893, attempting to amend the void act of March 9, 1891, without incorporating and carrying the latter act forward, is likewise void.

CONSTITUTIONAL LAWS.—*Validity of Act.*—*Resort Can Not Be Had to Engrossed Bill.*—*Enrolled Bill Conclusive.*—In passing upon the validity of an act of the Legislature, the enrolled bill, authenticated as

State, *ex rel.* Board of Commissioners of Benton Co., *v.* Boice *et al.*

required by the constitution, is conclusive as to the proper enactment, and resort can not be had to the engrossed bill.

SAME.—*Act Void in Part.— When Entire Act Fails.—County Treasurer. —Payment of Fees into ",Treasurer's Fund."*—That part of the fee and salary act of March 9, 1891, which relates to county treasurers being unconstitutional in its principal feature, the system as to such officers fails in its entirety, including the requirement to pay the fees collected into the "treasurer's fund."

SAME. —*Treasurer's Compensation.—Estoppel.*—It seems that a county treasurer who elects to keep the fees heretofore collected under the act of 1891, as compensation for his services, is estopped to afterwards claim the payment of a salary.

From the Benton Circuit Court.

*A. G. Smith*, Attorney-General, and *W. A. Ketcham*, Attorney-General, for appellant.

*B. K. Elliott*, *W. F. Elliott*, *J. B. Black* and *E. B. Pugh*, for appellees.

HACKNEY, J.—Abram Boice was elected treasurer of Benton county in the year 1892, and, after assuming the duties of that office, it is alleged, he received in fees collected from persons for services performed as such officer a sum of money which he withheld from the "treasurer's fund," established by the act of March 9, 1891. Acts 1891, p. 424, section 125.

It was further alleged that he appropriated said sum to his own use as a part of the compensation of his office, and denied the right of said county to assert or maintain any interest therein.

The relator sued upon the bond of said treasurer for the recovery of said sum to the use of said "treasurer's fund," and to the complaint, the lower court sustained the demurrer of the appellees.

In support of that ruling, it is insisted that the act of March 9, 1891, *supra*, was passed in violation of the following inhibitions of the State constitution: "The General Assembly shall not pass local or special laws in any

of the following enumerated cases, that is to say: * * * (10) Regulating the election of county and township officers, and their compensation. * * * (13) In relation to fees or salaries; except that the laws may be so made as to grade the compensation of officers in proportion to the population and the necessary services required." (Article 4, section 22.)

Also, that "In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State." (Article 4, section 23.)

The character, scope and object of the act in question were fully considered by us in the recent case of *Henderson* v. *State, ex rel.*, 137 Ind. 552, and it is unnecessary to further state them.

The act sought to establish a system of fees and salaries for numerous classes of offices and officers, among which was that of county treasurers. For that class of officers salaries were provided as to all of the counties of the State, omitting Shelby county, as to which county no compensation, by way of fees or salary, was provided. Thus it is insisted, with other propositions, that the act became local, and lacked uniformity of operation throughout the State with reference to the system of salaries contemplated and adopted by it.

In *State, ex rel.*, v. *Krost*, 140 Ind. 41, we held that the act should be considered as presenting a system of fees apart from the system of salaries also provided, and we now add that either system must stand and its constitutional validity be determined independently of the other. The system of salaries created and promulgated by the act was manifestly intended to be general as to the class of public officials to which the appellee Boice belongs, general in the sense that it was not designed to

apply that system to some of the counties of the State, and some other system or different rule to another county or other counties. This is made to appear clearly from those provisions of the act which require that the receipts of the office, as applied to every county in the State, shall be paid into the county treasury and constitute a "treasurer's fund" for the payment of treasurers' salaries.

It is utterly inconsistent with any theory of the intention of the Legislature that the fund should be created in any county and not be applied. This conclusion excludes the idea that it could have been intended to place the treasurers of all of the counties of the State, excepting Shelby county, upon salaries, and as to that county to permit the old fee system to continue or to provide, by implication, that the treasurer of that county should serve without compensation. We know, judicially, that the population of the omitted county and necessary services in the office of the treasurer thereof entitled it to be classified among the counties whose treasurers were given compensation by the act, yet we do not intimate that we could know or that we have authority to determine, to the exclusion of the legislative decision, as to what class said county should have been assigned or what the compensation should have been. As we find the question presented, ninety-one of the counties were included in the salary provisions by the act while one county was wholly omitted. It would appear, therefore, that the act is local in the sense that it applies to less than the whole State and that it has failed in its apparent purpose as a general law, applying throughout the State as to all counties whose conditions and wants render the legislation equally appropriate and necessary.

It is no less objectionable, in this sense, that it includes so great a part of the State and omits so small a

fraction than if it had included but the one county and had omitted the ninety-one remaining counties. That laws regulating the compensation of county officers shall not be local, is the command of the constitution, and it is not our privilege, by artful construction, to deny the command, though we may believe that the law which may fail is wise and just.

We are not to be understood as deciding that the amendment to the constitution, of March 14, 1881, does not, in another sense than that already considered, permit legislation of a local character. The provision as amended forbids local or special laws in relation to fees and salaries "except that laws may be so made as to grade the compensation of officers in proportion to the population and the necessary services required."

While it would appear that the framers of this provision intended that the varying differences to be found necessary in basing compensation upon "the population and the necessary services" in the several counties or classified districts of the State should not be objectionable as local or special, of this question we do not find it necessary in the present case to express an opinion. However, it is perfectly clear that if the act is not objectionable as local, it violates section 23, Art. 4 of the constitution, *supra*. That section, by its reference to section 22 of the same article, requires general laws in relation to salaries and in providing compensation for county officers, and that such laws shall be "of uniform operation throughout the State." As we have said, the act was designed to be general and it was essential that it should be general; essential, because its subject is within the enumerated cases required by the constitution to be legislated upon by general laws; essential, because the subject is one in which all the citizens of the State have an interest in common; essential, because all

of the treasurers of the State, as a class, whose offices are created and classified by the constitution, have an interest in common, and essential because every county in the State, as a governmental subdivision of the commonwealth, possesses conditions common to those of every other county, and not only supplies the same basis for a constitutional grading of compensation, but its interest in the subject is common to the interest of all.

Whenever a general law is necessary it is the imperative requirement of the constitution that such law shall be "of uniform operation throughout the State."

In the act before us, uniformity of operation was broken, by omitting to apply its provisions to one of a class of the offices included, to one of the counties forming an essential element of the State and to the interests and demands of a considerable number of the common population of the State.

It is suggested that the Legislature, by the act of February 25, 1893, affirmed the constitutionality of the act of 1891 by providing salaries for the various officers of Shelby county, including the treasurer. If the legislative construction of the law and the constitution were conclusive, this case would have no place in the courts, and judicial inquiry and interpretation would be denied. This conclusion, however, is at such variance from the well established rule which confines questions of interpretation to the courts, where legislative discretion is not involved, that we pass the suggestion without fuller consideration. If, by the suggestion, counsel desired to direct attention to the act of 1893 as supplying the omission in the act of 1891, it is but necessary to intimate that the act of 1893, standing alone, is subject to every possible objection we have found to the act of 1891. It is local and special both in its form and in its operation, while, as we have said, the constitution imperatively

commands that the subject shall receive general legislation of uniform operation.

It is not possible for one void act to render valid another void act. At least, without incorporating and carrying forward the act which has failed of its purpose. The amendatory act of 1893 had no greater force or effect than the amendment of a repealed statute. It simply amended a void act, an act which, in legal contemplation, had no existence whatever.

Counsel seek to impress us with the argument that "If this judgment is affirmed, then very important parts of the fee and salary law of 1891 will be overturned, and the fruition of years of struggle between the officeholding class, and the electorate of the State be swept away."

There is no doubt that this result should be regretted, but not more sincerely than the disobedience of the sacred commands of the constitution, or that the judiciary should be swerved from its solemn duty by a popular clamor, and it would, if possible, be more regrettable that the will of the people could not find expression through their chosen representatives. We feel that that condition does not exist in this State which can reasonably warrant any of these fears.

The judgment of the circuit court that the act in question, as to county treasurers, was unconstitutional, was clearly right and is affirmed.

Filed Nov. 27, 1894.

## On Petition for a Rehearing.

Hackney, J.—The attorney-general's able brief in support of the appellant's petition for a rehearing has been devoted chiefly to the proposition that this court should uphold the fee and salary law of 1891 by resort to the engrossed bill to supply the omission of a salary for the

State, *ex rel.* Board of Commissioners of Benton Co., *v.* Boice *et al.*

treasurer of Shelby county. It is expressly conceded by him that upon a consideration alone of the enrolled act the law is not valid for the reasons stated in the original opinion. It is conceded also, that under the decisions of this and many other courts, there is no resort to the engrossed bill for the purpose of disclosing any discrepancy or irregularity which would affect the validity of an act. But, it is urged with much force and ability, that such resort may be had to support and guard from attack an act of the Legislature. As early as the case of *Evans* v. *Brown*, 30 Ind. 514, the correct rule, and the reason therefor, have been fully determined, and have since been approved so frequently as, in our opinion, to preclude reasonable doubt of their correctness. *Bender* v. *State*, 53 Ind. 254; *Edgar* v. *Board, etc.*, 70 Ind. 331; *Board, etc.*, v. *Burford*, 93 Ind. 383; *Stout* v. *Board, etc.*, 107 Ind. 343; *State, ex rel.*, v. *Denny*, 118 Ind. 449.

In the case first cited, the holding which has been approved in those last cited, it was held that the authentication of the presiding officers of the Legislature to the enrolled act was conclusive evidence of the proper enactment of the law, and that the courts and the public could not look elsewhere in denial of that authentication. The necessity for a definite rule was made manifest by the requirement that the courts and the people were held to know the law, and that if this knowledge should be made to depend upon the varying impressions and decisions necessarily arising from a resort to contradictory records, and with equal propriety to the hastily prepared journals or the treacherous memory of a member, the requirement would involve endless confusion and hardship. It was held that to avoid such confusion and to establish a definite rule, the framers of the con-

stitution required the signatures of the presiding officers to the enrolled act.

The learned judge who wrote that opinion said: "Courts should be very careful not to invade the authority of the Legislature. Nor should anxiety to maintain the constitution, laudable as that must ever be esteemed, lessen their caution in that particular; for if they overstep the authority which belongs to them, and assume that which pertains to the Legislature, they violate the very constitution which they thereby seek to preserve and maintain."

If the object of the constitutional requirement, that the presiding officers should sign the bill passed, was to give the authenticity necessary to a definite rule, then the same reason must exist for refusing to go behind the enrolled act for the purpose of supporting it as for its destruction. In either event, to go back of the constitutional authentication would be unauthorized.

Of course we do not venture an opinion as to the power of the courts to consider any act or circumstance following the regular signing of the bill as passed, which act or circumstance may be claimed to have despoiled the bill as passed and signed. The spoliation of an act, the act not being complete until signed, would raise a very different question from that here presented. Here there is nothing of which the court can take judicial cognizance that there was such a spoliation.

We did not consider this question on the original hearing, for the reason that counsel, then representing the appellant, expressly waived the question. They said: "The enrolled bill, as signed by the speaker of the House of Representatives, the president of the Senate, and approved by the Governor of the State, is conclusive evidence of what was enacted by the Legislature. This is not only the doctrine of our own court, but also that of

the United States, where an entire and very important section was left out of the enrolled tariff bill, though embraced in the engrossed bill. *Field* v. *Clark*, 143 U. S. 649,'' and citing the cases to which we have already made reference.

The complication existing in the pending settlements of certain county treasurers with the auditor of State, and possible embarrassment of such settlements in the future, induce us to state more fully our position in the original opinion as to the power of the appellee to retain the fees collected in the course of his term of office and for which the appellant sued.

The allegation of the complaint was that such fees were ''taxed, collected and received by him as such treasurer prior to the first Monday of December, 1893, and during the quarter ending that day.'' While impressed with the improbability that $417.87 could have been collected in the fees of the office for the period mentioned, if taxed under the act of 1891, we nevertheless felt constrained to hold that such was the effect of the above quoted allegation. Of course if they had been collected from a taxation thereof, under the act of 1879, they were not legitimate, and we could not hold that they belonged to the county unless they were withheld by him from the taxes collected for the county. Treating the fees sued for as having been taxed pursuant to the act of 1891, they would have belonged to the ''treasurer's fund'' but for the invalidity of the act. As to clerks, sheriffs, auditors and recorders the provisions of the act relating to their offices severally, expressly deny the ownership of the fees by the officers, and declare such ownership to be in the counties.

No similar provision is made as to treasurers. If there had been, we would have doubts of the correctness of the original opinion. While it is provided by section 125

(Acts 1891, p. 450), that the treasurer and other officers named shall pay the fees collected by them into the treasury, those collected by him to constitute a "treasurer's fund," it is not provided, as in the case of the clerks, sheriffs and recorders, that the payment of his salary shall in any manner depend upon the amount received and paid into said fund by him. See section 127, Acts 1891, p. 451.

The salary of the treasurer was payable from any moneys in the treasury not otherwise appropriated (section 127), though we have no doubt it was contemplated that the sums, so directed to be by him paid into the county treasury, were to be considered as a part of the sum payable upon his compensation, otherwise the fund would have accumulated to no purpose. Bearing in mind that the fees were not, as in other cases, the property of the county, they stood, upon the legislative theory of the act, as a credit upon the officer's salary.

The holdings of this court, in *Henderson* v. *State, ex rel.*, 137 Ind. 552, and *State, ex rel.*, v. *Krost*, 140 Ind. 41, were that the act in question included a complete system of fees as between the office and the public; that the salary provisions of the act should be considered in their application to the various classes of officers severally; that in either respect, considered apart from the other features of the law, the provisions could be considered and upheld or defeated without affecting other elements of the law, and that the repealing clause of the act was not defeated by the partial invalidity of the act.

Applying these holdings to the present case we find that we may consider the treasurer's salary features of the law as if they stood apart from all other provisions. So considering it, we have no doubt of the design to make a system of treasurer's salaries complete in all of

State, *ex rel.* Board of Commissioners of Benton Co., *v.* Boice *et al.*

its parts; that it was not intended to require such offi-
cers to serve without compensation; that the principal
compensation of treasurers was not to be realized in fees
but was to be paid from county funds, since the fees pro-
vided by the act were necessarily small; that the require-
ment that the fees should be credited to the fund was an
essential part of the entire system, and it could not have
been contemplated that all other features of the system
could fail and that feature remain in force.    Therefore,
having found that the principal features of the treasurer's
salary system were unconstitutional, necessarily that sys-
tem, in its entirety, failed and with it the requirement
that he should pay the fees collected by him into the
"treasurer's fund."

By section 135 of the act, it is provided that he shall
not receive both fees and salary.    If, therefore, he
chooses to keep the fees he is probably estopped to claim
hereafter the payment of a salary, and, since the law of
1879 is repealed, we can not hold that fees may be col-
lected or held as compensation under that law.

The inquiry may arise as to the source of compensa-
tion for the treasurer who may have paid into the "treas-
urer's fund" the fees collected by him, but of this ques-
tion we venture to offer no opinion, but we may sug-
gest, that if the county board does not make the payment
the only remedy is probably with the Legislature.

The petition for a rehearing is overruled.

Filed April 11, 1895.