LITTON HICKMAN, County Judge, *v.* JOE W. WRIGHT, Sheriff.

(*Nashville.* December Term, 1918.)

1. **CLERKS OF COURTS. Counties. Equity. Registers of deeds. Sheriffs and constables "throughout the state." Fees. Statutes.**

Acts 1917, chapter 47, providing that clerks of court, masters in chancery, county trustees, registers of deeds, and sheriffs throughout the State shall be deprived of their fees and compensated only by salary as hereinafter provided, must be construed as depriving such officers of their fees in counties of less than 30,000 population, though salary for such officers was not thereinafter provided. (*Post, pp.* 417, 418.)

Acts cited and construed: Acts 1917, ch. 47; Acts 1897, ch. 124.

2. **STATUTES. Construction. Omission.**

A pure *casus omissus* occuring in a statute can never be supplied or relieved against by the court under any rule or canon of construction or interpretation. (*Post, p.* 418.)

Cases cited and approved: Kelly v. State, 123 Tenn., 516; State ex rel. Board, etc., of Benton County v. Boice, 140 Ind., 506.

3. **STATUTES. Construction. Ambiguity.**

If actual language and provisions of statute are plain and clear, and are devoid of contradiction, or any affirmative ambiguity, so that statute, as result of express provisions, is not reasonably susceptible of twofold meaning, there is no room for applying any other rules or canon of construction. (*Post, pp.* 418, 419.)

Cases cited and approved: Miller v. Childress, 21 Tenn., 319; Kirk v. State, 41 Tenn., 344; State v. Manson, 105 Tenn., 232; Samuelson v. State, 116 Tenn., 470; Darnell v. State, 123 Tenn., 663; Heiskell v. Lowe, 126 Tenn., 475; State v. Wheeler, 127 Tenn., 58; Palmer v. Express Co., 129 Tenn., 116.

4. **CLERKS OF COURTS.** Constitutional law. Counties. Registers of deeds. Sheriff and constables. Fees. Due process of law. Class legislation.

Acts 1917, chapter 47, depriving clerks of courts, sheriffs, registers of deeds, masters in chancery, and county trustees throughout the State of fees, and providing salaries for only a part of them, is unconstitutional, as depriving part of such officers of compensation, contrary to "the law of the land," and as "class legislation" (Const. article 1, section 8, and article 11, section 8). (*Post, p.* 419.)

Acts cited and construed: Acts 1917, ch. 47.

Constitution cited and construed: Art. 1, sec. 8; Art. 11, sec. 8.

5. **STATUTES.** Special laws. Classification of officers. Compensation.

Acts 1917, chapter 47, classifying certain officers for purposes of compensation according to population of their respective counties, making the minimum of one class and the maximum of the succeeding class the same, violates Constitution article 11, section 8, as allowing one in a certain class to enjoy a greater benefit than others in the same class. (*Post, pp.* 419, 422.)

6. **CONSTITUTIONAL LAW.** Delegation of legislative power. Imposition of non-judicial duties on judiciary.

In view of Constitution article 11, section 9, legislature, in passing Acts 1917, chapter 47, did not violate Constitution article 2, sections 1, 2, relating to delegation of legislative power and imposition of nonjudicial duties upon judiciary, when it delegated to the courts authority to determine the number of deputies of county officers unable to perform all the duties of the office and the salaries they were to receive. (*Post, pp.* 422, 423.)

Acts cited and construed: Acts 1917, ch. 47.

Constitution cited and construed: Art. 11, sec. 9; Art. 2, secs. 1, 2.

---

FROM DAVIDSON.

---

Error to the Criminal Court of Davidson County.—
HON. J. D. B. DE Bow, Judge.

W. E. NORVELL, JR., and PITTS & McCONNICO, for Wright.

FRANK M. THOMPSON, T. J. McMORROUGH and R. LEE BARTELS, for Hickman.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This suit involves the constitutionality of chapter 47 of the Acts of 1917, known as the "anti-fee bill."

The lower court held the act to be unconstitutional, and the case has been brought to this court by appeal.

The caption and the first two sections of the act are as follows:

"An act to be entitled, 'An act fixing the salaries of certain county officials in the state, to wit: The several clerks and masters of the chancery courts, clerks of the various county and probate, circuit, criminal and special courts, county trustee, register of deeds and sheriffs; to provide for the disposition of the fees of their offices; to fix the salaries of said offices and to provide for the payment thereof; to provide for the appointment and removal of deputies and assistants of said officers and to prescribe the manner of fixing their salaries and the payment thereof, and to provide for the payment of the expenses of the offices, and to provide punishment for the violation of certain provisions of this act, and otherwise regulate the rights, duties and liabilities of the said officers, and to provide for a system of auditing for said offices.'

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, that the clerks and masters of the various chancery courts, the clerks of the various

circuit, county and probate, criminal and special courts, county trustees, registers of deeds, and sheriffs throughout the State shall be deprived of all their fees, commissions, emoluments and perquisites that shall hereafter accrue, or be received by virtue of their respective offices; and they shall be compensated for their services by salaries alone as hereinafter provided, the same to be payable as hereinafter provided, which salaries shall be in lieu of all other compensations, provided that nothing in this act shall be construed to apply or refer to any fees, commissions, emoluments or perquisites in which said officers shall have a vested right at the time this act goes into effect.

"Sec. 2.  Be it further enacted, that for the purposes of determining the salaries to be received by the various officers mentioned in section 1 of this act, the several counties of the State, except counties having a population under 30,000 according to the federal census of 1910, or any subsequent federal census, are hereby divided into classes as follows:

"Counties having a population of not less than 190,000 shall constitute counties of the first class.

"Counties having a population of not more than 190,000, and not less than 140,000, shall constitute counties of the second class.

"Counties having a population of not more than 140,000, and not less than 85,000, shall constitute counties of the third class.

"Counties having a population of not more than 85,000, and not less than 37,500 shall constitute counties of the fourth class.

"Counties having a population of not more than 37,500, and not less than 30,000 shall constitute counties

of the fifth class, and provided that the population of the several counties for the purpose of this act, shall be determined by the federal census of 1910 and by each succeeding federal census.''

The third section fixes the salaries of the various officials in the five classes of counties enumerated in the second section.

It· is admitted that the counties contained in said five classes are as follows: First class, Shelby; second class, Davidson; third class, Hamilton and Knox; fourth class, Gibson, Madison, and Maury; and fifth class, Fayette, Giles, Green, Montgomery, Rutherford and Weakley—making a total of thirteen counties, while there are eighty-three counties that are not classified, and for whose officials no compensation, either as salaries or fees, is provided.

It is insisted by the appellee that the caption and section 1 of the act declare in plain language an intent to deprive the county officials in all counties througout the state of all fees, emoluments, etc., thereafter received by them, and that all such offices should thereafter be compensated by salaries alone, which would be fixed by the provisions of the act, but that the act failed to carry out this purpose and plan, and overlooked providing such salaries for officials of the counties having a population of less than 30,000.

On the other hand, it is insisted by the plaintiff in error that it was the intention of the legislature to limit the act to officials in counties having a population of 30,000 or over; that is to say, that the words ''throughout the State,'' contained in section 1 of the act; followed by the words ''as hereinafter provided,'' had reference to those officials ''throughout the State''

in the counties of 30,000 in population or over as thereinafter provided.

The act is not susceptible to this latter construction. The language is plain, unambiguous, and uncontradictory. The caption of the act says:

"An act fixing the salaries of certain county officials in the State, to wit: The several clerks and masters of the chancery courts, clerks of the various county and probate, circuit, criminal and special courts," etc.

There is nothing in the language used to suggest that the deprivation of fees was only applicable to officials in the thirteen counties composing the five classes, or that salaries were to be paid only to such officials within said thirteen counties. And the same is true of section 1 of the act, which says:

"That the clerks and masters of the various chancery courts," etc., "throughout the State shall be deprived of all their fees, commissions," etc., "and they shall be compensated for their services by salaries alone as hereinafter provided."

Webster's International Dictionary defines the word "throughout" to mean "from one extremity to the other of; in every part of." The meaning of this part of the act is that all the clerks, trustees, sheriffs, etc., in the entire state, are deprived of their fees, etc.

This construction is strengthened by the fact that section 1 of the acts of 1917 is almost a *verbatim* copy of section 1 of chapter 124 of the Acts of 1897, known as the "Estes fee bill." In this latter act we know that, in using the identical language as that used in the act under consideration, the legislature intended to deprive such officials in all of the counties in the State of their fees, etc., for, in a subsequent part of the act,

141 Tenn.—27

they provided salaries for all such officials, and when the legislature used this language in the act of 1917, they evidently intended the language used to bear the same construction as was intended by the language used in the act of 1897.

It is apparent, therefore, that the legislature intended to deprive all state officials, enumerated in the act, of their fees, and to put them on a salary basis; but, for some unexplained reason, they overlooked fixing salaries for such officials in the eighty-three counties having a population of less than 30,000. Such an oversight is termed in law a *"casus omissus."*

A pure *"casus omissus"* occurring in a statute can never be supplied or relieved against by the court under any rule or canon of construction or interpretation. Lewis' Sutherland, Statutory Construction (2d Ed.), vol. 2, sections 605, 606; 11 Corpus Juris, p. 31, note 69; 26 Am. & Eng. Ency. of Law (2d Ed.), p. 601; *Kelly* v. *State,* 123 Tenn., 516, 132 S. W., 193; *State ex rel. Board, etc., of Benton County* v. *Boice,* 140 Ind., 506, 39 N. E., 64, 40 N. E., 113.

The foregoing conclusion is not in conflict with our liberal rules of construction and interpretation of statutes. The universal rule seems to be that if the actual language and provisions of the statute are plain and clear, and are devoid of contradiction or any affirmative ambiguity, so that the statute, as the result of the express provisions, is not reasonably susceptible of a twofold meaning, then there is no room for applying any other rules or canon of construction to the act. Lewis' Sutherland, Statutory Construction (2d Ed.), vol. 2, section 589; 36 Cyc., p. 1106; 26 Am. & Eng. Ency. of Law (2d Ed.), p. 597; *Miller* v. *Childress,* 2

Humph., 319; *Kirk* v. *State,* 1 Cold., 344; *State* v. *Manson,* 105 Tenn., 232, 58 S. W., 319; *Samuelson* v. *State,* 116 Tenn., 470, 95 S. W., 1012, 115 Am. St. Rep., 805; *Darnell* v. *State,* 123 Tenn., 663, 134 S. W., 307; *Heiskell* v. *Lowe,* 126 Tenn., 475, 153 S. W., 284; *State* v. *Wheeler,* 127 Tenn., 58, 152 S. W. 1037; *Palmer* v. *Express Co.,* 129 Tenn., 116, 165 S. W., 236.

For the court to arbitrarily and dogmatically say that the intent was to withdraw the fees from county officials only in thirteen counties, when the act says such officials "throughout the State" are deprived of their fees, would result in the court making laws rather than construing them.

As a result of this "*casus omissus,*" trustees, clerks, sheriffs, etc., in eighty-three counties of the State are deprived of their salaries and of all other compensation, in violation of "the law of the land" and the "class legislation" provisions of our State Constitution (article 1 section 8, and article 11, section 8).

It is further insisted that said act violates these several provisions of the Constitution in this: That the minimum of the first class and the maximum of the second class are the same (190,000); the minimum of the second class and the maximum of the third class are the same (140,000); the minimum of the third class and the maximum of the fourth class are the same (85,000); and the minimum of the fourth class and the maximum of the fifth class are the same (37,500). From which it follows that any county that may have a population of exactly 190,000 now or hereafter is or will be in two classes, the first and second, at the same time; that any county that

may have a population of exactly 140,000 now or here-after is or will be in two classes at the same time, etc.

This being true, it is insisted that the official in this situation would have the right to choose the higher salaries of the two classes, when no other county in the lower class would have that right, and thus he would enjoy a greater benefit and receive a larger salary than other officials in the same class. This would be true, and therefore violates said constitutional provisions.

Again, Gibson county one of the three counties of the fourth class, has two chancery courts and two clerks and masters, one at Trenton and one at Humboldt; also two circuit courts and two circuits court clerks, one at Trenton and one at Humboldt. The two courts at Humboldt are special courts created by a special act. Hence their clerical officers are clerk and master and clerk of "special courts," and as such they are deprived of all their fees by the first section of the act under consideration, and by the act they are left in that condition. After the first section, special courts and clerks of special courts are never mentioned again in the act.

It follows, therefore, that the clerk and master of the chancery court and the clerk of the circuit court at Humboldt are now allowed neither fees nor salaries, and are deprived of all compensation for their official services, while the clerk and master of the chancery court and the clerk of the circuit court at Trenton, by the second and third sections of the act, are allowed annual salaries of $2,250 and $2,000. No good reason has been suggested for this distinction, which, we think, renders the act obnoxious to those provisions of the Constitution with which we have been dealing.

It is still further insisted that the act in question, when taken and construed *in pari materia* with more than ninety statutes of the State applicable to the compensation of county officials in counties of under 30,000 inhabitants, clearly amounts to arbitrary and capricious class legislation.

This insistence is made, as we understand it, upon the theory that the court holds the act was intended to apply to only the thirteen counties embraced within the five classes.

Having, however, construed the act to apply to all counties in the State, this insistence is no longer pertinent.

Under these sections of the Constitution it is further insisted that section 5 of the Salary Act of 1917 is arbitrary and capricious, in that it requires excess fees collected by certain county officials in thirteen counties to be paid into the State treasury, and the excess fees collected by other county officials to be paid into the county treasury. Section 5 is as follows:

"Sec. 5. Be it further enacted, that all the excess fees, commissions, perquisites and emoluments, no matter whether such sums arise from fees, commissions, perquisites or emoluments by order or by direction of court, or for pay for special services as trustee, receiver or otherwise that are now or may hereafter be receivable, directly or indirectly by virtue of their offices, by the clerks of the circuit, criminal and special courts and the clerks and masters of the chancery courts shall be paid into the State treasury as a part of the State revenue and are hereby declared to be the property of the State; that all such excess fees, commissions, emoluments and charges of the offices of the trustee, sheriff,

clerks of the county and probate courts and registers of deeds shall be paid to the county trustee as a part. of the county revenue, and the same are hereby declared to be the property of the respective counties wherein the same are collected.''

It is insisted that, to the extent that excess fees from any of these county officers in the thirteen larger counties are given to the State, for the benefit of all the other eighty-three counties and the taxpayers thereof, to just that extent the people and taxpayers in the thirteen larger counties are having their tax burdens increased for the benefit of the taxpayers in the other eighty-three counties, who are having their tax burdens correspondingly lightened. This contention seems to be based, also, upon the idea that the act was intended to apply to only the thirteen counties, while we have held that the act was intended to apply to all of the counties of the State. It is unnecessary, therefore, to pass upon this question.

The question as to the reasonableness of such division of the revenues resulting from excess fees between the State, on the one hand, and the county, on the other, where officials in all of the counties of the State are put upon a salary basis, as was done in the Estes fee bill, does not arise in this case, for the reason that the legislature omitted to put the officials in the other eighty-three counties on salaries.

It is next insisted that the act is unconstitutional, because it undertakes to delegate legislative power, and also attempts to impose nonjudicial duties upon the judiciary of the State by attempting to saddle upon the judges and chancellors below, and appellate judges on appeal, without any statutory limitation or rule to

guide them, the raw political function and duty of fixing the number and salaries of all the deputies of all the county officers in all of the counties to which the act applies, in violation of both section 1 and section 2 of article 2 of our State Constitution.

The act does not provide for any deputies whatever, but by section 6 and section 7 it is provided that, when the officer is unable to perform the duties of the office by putting in his full time, then he may file a petition before the circuit or criminal judge, or the chancellor, as the case may be, etc., asking for the appointment of a deputy or deputies. To this proceeding the county judge or chairman shall be made a party, and, after hearing the evidence, the court shall determine how many deputies shall be appointed and the salaries they are to receive.

Article 11, section 9, of the Constitution of Tennessee provides that "The legislature shall have the right to vest such powers in the courts of justice, with regard to private and local affairs."

As to the policy of delegating to the courts the authority to determine the number of deputies and the salaries they are to receive this court has nothing to do; but if the legislature sees proper to confer this power on the courts, then under the foregoing provision of the Constitution we think it has a right to do so, and that it would not be a wrongful delegation of power, and would not be imposing nonjudicial duties on the courts.

Several other constitutional objections are interposed to the act, which we have carefully considered, and which we think are not well taken. The learned criminal judge was correct in holding the act wholly void, and his judgment is affirmed, with costs.