# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

**FILED**

**November 19, 1997**

Sequatchie Chancery No. 1663

**Cecil W. Crowson**

Appeal No. 01A01-9609-CH-00446

**Appellate Court Clerk**

| | | |
|---|---|---|
| **CONNIE EASTERLY, COUNTY CLERK** | ) | |
| **OF SEQUATCHIE COUNTY, TENNESSEE,** | ) | |
| | ) | |
| Plaintiff/Appellee | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **BILL W. HARMON, COUNTY EXECUTIVE** | ) | |
| **OF SEQUATCHIE COUNTY, TENNESSEE,** | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

APPEAL FROM THE CHANCERY COURT OF SEQUATCHIE COUNTY
AT DUNLAP, TENNESSEE

THE HONORABLE JEFFREY F. STEWART, CHANCELLOR

For the Plaintiff/Appellee:

Graham Swafford
Jasper, Tennessee

For the Defendant/Appellant:

Thomas A. Greer, Jr.
Dunlap, Tennessee

**AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED**

HOLLY KIRBY LILLARD, JUDGE

CONCUR:

ALAN E. HIGHERS, J.

BEN H. CANTRELL, J.

**OPINION**

This is a suit brought by a county clerk against the county executive, seeking additional remuneration for deputy clerks in the county clerk's office. The trial court found in part for the county clerk, awarding some, but not all, of the relief requested. We affirm in part, reverse in part, and remand.

Plaintiff/Appellee Connie Easterly ("Easterly") assumed the duties as Sequatchie County Clerk in 1990. At that time, the duties of her office primarily involved such tasks as handling applications for motor vehicle titles and registration, collecting business taxes and issuing business licenses, issuing marriage licenses, collecting the beer tax, maintaining records of the juvenile clerk and utility districts, and serving as clerk of the Sequatchie County Commission. These duties are enumerated in Tennessee statutes. *See* Tenn. Code Ann. § 18-1-105 (1994); Tenn. Code Ann. § 18-6-104 through -111(1994); Tenn. Code Ann. § 55-6-105 (Supp. 1997)**.**

When Easterly initially took office, she was assisted by one full-time deputy clerk, who worked thirty-two hours per week, and one part-time deputy clerk, who worked twenty hours per week. The parties dispute whether these deputy clerks were salaried employees or whether they were paid on an hourly basis. When Easterly first commenced her duties as County Clerk, this staff was "adequate" to handle the responsibilities of the office.

Gradually Easterly's office began to assume duties that are not mandated by statute. One of these duties was the issuance of hunting and fishing licenses. At the time this duty was added, Easterly believed that Sequatchie County was the only county that did not issue such licenses. She claims that Bill Harmon ("Harmon"), County Executive of Sequatchie County, encouraged her to undertake the task.

Another non-statutory duty added by Easterly involved the issuance of driver's license renewals. Like the issuance of hunting and fishing licenses, this is a task that Easterly contends is "customary" to be performed by county clerks' offices throughout the State. According to Easterly, Harmon helped initiate the idea and was involved in discussions throughout the project's implementation.

Easterly further contends that the County Commission expressly authorized her to issue the

driver's license renewals. Easterly cites the minutes of a November 18, 1991 meeting of the Commission:

> The Commission was informed that the State was initiating a six-month pilot project to provide two computer terminals and two printers to the Sequatchie County Clerk's office for driver's license issuance at no cost to the county. A motion to participate in said project was made by Bobby Turner, seconded by Randall Phillips, and passed by a unanimous vote of the Commission.

As part of this pilot program, the state paid for an additional part-time employee to work in the County Clerk's office for a short period of time. When the period of time for the pilot program expired, Easterly maintains that she received the approval of the Commission's budget committee to hire the temporary part-time employee as a permanent full-time employee.

A third non-statutory duty assumed by the County Clerk's office during Easterly's tenure is the motor vehicle "title print program." This program allows the county to issue titles more quickly. When the motor vehicle title print program was implemented, the only other counties in Tennessee that had the capability of printing titles were Shelby, Davidson, Knox, and Hamilton Counties, all urban counties. Easterly states that the idea was instigated by the Tennessee Commissioner of Safety, who was seeking the participation of a rural county. Easterly said that Harmon implicitly approved the project by helping to finance the purchase of a printer, and that she "explained it" to the Commission.

As a result of these additional responsibilities, the growth of the county, and additional requirements imposed by the state regarding mandated statutory duties of the County Clerk's office, the office hours increased, Easterly and her staff were forced to devote more hours, and more deputies were needed. At the time of trial Easterly's staff consisted of three full-time deputies and one part-time deputy.[1] The full-time employees' hours had increased from approximately thirty-two hours per week to approximately forty hours per week.

Easterly sought compensation from the County Executive, Harmon, for the additional labor and other costs. When Harmon refused to tender compensation to the deputy clerks for time worked in excess of thirty-two hours per week since July 1, 1995, Easterly brought this suit pursuant to

---

[1]The part-time deputy began employment a week before the trial. Both parties concede that the hiring of these deputies was duly authorized by the Commission, and, thus, the employment of these employees is not an issue in this case.

Tennessee Code Annotated Sec. 8-20-101 (Supp. 1997). This statute states:

> (a) Where any one (1) of the clerks and masters of the chancery courts, the county clerks and the clerks of the probate, criminal, circuit and special courts, county trustees, registers of deeds, and sheriffs cannot properly and efficiently conduct the affairs and transact the business of such person's office by devoting such person's entire working time thereto, such person may employ such deputies and assistants as may be actually necessary to the proper conducting of such person's office in the following manner and under the following manner and under the following conditions, namely: . . .

> (3) The clerks and masters of the chancery courts, county trustees, county clerks and clerks of the probate courts, and registers of deeds may make application to the chancellor, or to one (1) of the chancellors (if there be more than one (1)), holding court in their county by sworn petition as above set forth, showing the necessity for a deputy or deputies or assistants, the number required and the salary each should be paid.

Tenn. Code Ann. § 8-20-101(a) & (a)(3). Easterly's lawsuit sought additional compensation for present deputies, as well as court approval for the hiring of additional part-time deputies.

At the trial, Harmon's testimony suggested that he and the County Commission were under the impression that the non-statutory duties assumed by Easterly would bring in enough revenues to be self-sustaining. Harmon indicated, however, that the revenues generated were insufficient to cover the costs of both implementation and labor. Apart from Easterly's testimony that she received outright or tacit approval from Harmon or the County Commission for the assumption of the non-statutory duties, the only documentary evidence of such approval submitted at trial were the minutes of the November 18, 1991 County Commission meeting, quoted above, and a newspaper article regarding the motor vehicle title print program.[2] Harmon took the position at trial that the County Executive is not required to fund the costs of non-statutory duties. Harmon also maintained that full-time deputies in Easterly's office were paid on a salary basis for whatever hours they worked, and that the County Executive was not required to provide funds for the deputies' increase in hours from thirty-two per week to forty per week.

After the trial, the trial court issued a Memorandum Opinion. The trial court discussed the three additional non-statutory duties assumed by Easterly. It recounted Easterly's testimony that Harmon "asked her to begin issuing the hunting and fishing licenses. . . ." Before undertaking the issuance of driver's license renewals, the trial court observed that Easterly "sought and received the

---

[2]Although Easterly testified that approval by the County Commission of the motor vehicle title print program was evident in the minutes of a County Commission meeting, the record does not indicate that these particular minutes were admitted into evidence.

approval" of the County Commission. As to the motor vehicle title print program, the trial court stated:

> The Plaintiff presented this plan to the County Commission before beginning the program. The County Commission took no official action and did nothing to discourage the Plaintiff from beginning this program.

The trial court noted Easterly's testimony that the statutory duties of her office cannot be performed in a thirty-two hour work week. It stated that Easterly "admits the additional duties undertaken over and above her statutory duties require about 25 per cent of her deputies['] time to complete."

The trial court recognized the argument that funds could be required only for the performance of statutory duties, but stated:

> In this case the County Commission was apprised by the Plaintiff of the plan to add additional services to her office and the relative cost and expense thereto. In each case the County Commission either gave its tacit or out right [sic] approval.

The trial court therefore awarded Easterly funding to pay the deputies for forty hour work weeks. It found that the part-time employee added shortly before trial was "sufficient to meet the staffing requirements" and declined to authorize the hiring of additional deputies. From this decision, Harmon now appeals.

On appeal, Harmon argues that the trial court erred in awarding the funding sought by Easterly. Harmon maintains that it was improper to award the funding based on a finding that the County Commission had "tacitly" or "implicitly" approved the non-statutory duties assumed by Easterly. Harmon also contends that the trial court erred in finding that the minutes of the November 18, 1991 meeting of the County Commission bound the Commission to fund the costs of issuing driver's license renewals.

The appropriate standard of review for a case involving Tennessee Code Annotated § 8-20-101 is *de novo* "based on findings of fact established by a preponderance of the evidence." *Dulaney v. McKamey*, 856 S.W.2d 144, 146 (Tenn. App. 1992). No presumption of correctness, however, is afforded a question of law. *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn. 1995).

In Tennessee, the courts are "reluctant arbiters of the budget disputes between certain local officials and their county government." *Jones v. Mankin,* No. 88-263-II, 1989 WL 44924 at *3 (Tenn. App. May 5, 1989) (citing *Hunter v. Conner,* 152 Tenn. 258, 278, 277 S.W. 71, 76 (1925); *Hickman v. Wright,* 141 Tenn. 412, 422-23, 210 S.W. 447, 450 (1919)). The county budgetary process in particular is an area better suited for the political arena of the county legislative body. *See*

4

*Mankin,* 1989 WL 44924, at *2-4. Therefore, courts should avoid "interfer[ing] with the county legislative body's budgetary decisions unless the legislative body is under some legal obligation to appropriate funds." *Id.* at *4.

However, the courts have been "brought into the budget fray" by the Tennessee legislature's enactment of Tennessee Code Annotated § 8-20-101. Under this statute, a county clerk may petition a court for approval of the number of employees needed and their pay if he or she "cannot properly and efficiently conduct the affairs and transact the business of such person's office." Tenn. Code Ann. § 8-20-101(a).

In cases involving county sheriffs, Tennessee courts have indicated that this provision can only be utilized to obtain funds for duties that are statutorily mandated. In *Smith v. Plummer*, 834 S.W.2d 311 (Tenn. App. 1992), a county sheriff brought suit against the county executive pursuant to § 8-20-101, in order to receive authorization to hire additional personnel. Reversing the trial court's approval for the additional personnel, this Court held:

> The authority of the courts to authorize expense of conducting the conduct of a sheriff's office is limited to those activities related to the performance of *statutory duties* for which the collection of a fee is authorized. That is to say, the courts have power to authorize the sheriffs to spend monies collected in fees for performing statutory duties for the expenses, including personnel, necessary for the performance of such duties.

*Id.* at 314 (emphasis added).

A similar action was brought by a county sheriff in *Cunningham v. Moore County,* 604 S.W.2d 866 (Tenn. App. 1980). In *Cunningham*, non-mandated duties undertaken by the sheriff's office included escorting funerals and a dispatcher service. *Id.* at 868. The Court noted that, in order to fulfill the statutory requirements set forth in Sec. 8-20-101,[3] the plaintiff must:

> prove in numerical quantity the number of times per day, week, month or year the Sheriff is called upon to perform the *statutory duties* of his office, that he and his previously authorized employees have devoted their full working time to the performance of such duties and that their combined efforts have not been sufficient to perform all such duties, some of which have not been performed for this reason.

*Id.* (emphasis added). Finding "no statutory requirement" for the additional responsibilities undertaken by the sheriff, the Court affirmed the trial court's denial of relief. *Id.* at 868-69; *cf. Roberts v. Lowe,* No. 03A01-9610-CC-00333, 1997 WL 189345 (Tenn. App. Apr. 16, 1997)

---

[3]At the time of the case, the statutory provision numbered as Tenn. Code Ann. § 8-2001.

(applying the standard set forth in *Cunningham* and finding that the plaintiff had provided sufficient evidence to show that it could not fulfill its "statutory duties").

*Mankin* also involved an action pursuant to § 8-20-101 filed by a county sheriff. *Mankin,* 1989 WL 44924. Consistent with *Smith v. Plummer* and *Cunningham*, this Court stated:

> Like other local officials, sheriffs do not have the right to insist upon funds for additional personnel until a court has determined that the personnel are necessary for the discharge of the sheriff's *statutory duties.* . . .Thus, in considering a Tenn. Code Ann. § 8-20-101(2) application for increased personnel-related expenditures, the courts may consider only those requests that are related to *statutory duties* for which the sheriff collects a fee.

*Id.* at *4-5 (emphasis added).

The trial court in the instant case recognized *Smith v. Plummer* for the proposition that Easterly cannot seek authority from the courts for funds for duties that are not statutorily mandated. However, it distinguished *Plummer* based on the trial court's finding in this case that the County Commission "either gave its' tacit or out right [sic] approval" for the non-statutory duties.

An act by a county commission is "not complete or effective to bind the county for any purpose until the record evidencing action by the [commission] has been made." *Epps. v. Washington County,* 173 Tenn. 373, 375-76, 117 S.W.2d 749, 750 (1938). The minutes of the commission are the "sole witness" and parol testimony is inadmissible. *Id.*, 173 Tenn. at 376, 117 S.W.2d at 750*; Bozeman v. State ex rel. Anderson*, 206 Tenn. 23, 26, 330 S.W.2d 553, 554 (1959); *State ex rel. Wolfe v. Henegar,* 180 Tenn. 425, 432, 175 S.W.2d 553, 555 (1943). Therefore, "tacit" approval by the County Commission is insufficient to bind the Commission; express approval in the minutes is essential.[4]

In this case, Easterly sought funding for three non-statutory duties: (1) issuing hunting and fishing licenses, (2) the motor vehicle title print program, and (3) issuing driver's license renewals.

As to the issuance of hunting and fishing licenses, Easterly testified that Sequatchie County was the only county that did not issue such licenses, and that Harmon encouraged her to assume this

---

[4]Easterly testified that County Executive Harmon approved some functions. The Plaintiff's reliance on approval from County Executive Harmon is misplaced. Even though Harmon presides over the Commission, his vote is entitled to no more weight than the vote of any other commissioner. Thus, he alone cannot speak on behalf of the commission; there must be action by the majority, reflected in the minutes. *See Connell v. County Judge of Davidson*, 39 Tenn. (2 Head) 189 (1858). Furthermore, Easterly may not rely on Harmon in his capacity as county executive. The county executive and county clerk are independent entities and Easterly is not subject to his control. *See Mankin,* 1989 WL 44924 at *2.

duty. Likewise, with the motor vehicle title print program, Easterly stated that adoption of this program was initiated by the Tennessee Commission of Safety, that Harmon implicitly approved it by helping finance some of the necessary equipment, and that she "explained" the program to the Commission and they failed to take action.

As set forth above, in the absence of express approval by the County Commission as set forth in its minutes, the evidence is insufficient to support the trial court's finding of County Commission approval for Easterly's assumption of these duties.

As to the issuance of driver's license renewals, Easterly testified that this task is "customarily" performed by county clerks' offices throughout the State, and that Harmon helped initiate the idea and was involved throughout its implementation. Easterly also argues that the County Commission expressly approved her assumption of this duty in the minutes of its November 18, 1991 meeting:

> The Commission was informed that the State was initiating a six-month pilot project to provide two computer terminals and two printers to the Sequatchie County Clerk's office for driver's license issuance at no cost to the county. A motion to participate in said project was made by Bobby Turner, seconded by Randall Phillips, and passed by a unanimous vote of the Commission.

As noted above, the fact that this duty is customary and Harmon encouraged it is insufficient to support a finding that the County Commission approved Easterly's undertaking of this task. Moreover, the entry in the Commission minutes of its November 18 meeting discuss only participation in "a six-month pilot project" which would be "at no cost to the county." This entry in the minutes is insufficient to support a finding that the County Commission approved Easterly's assumption of this duty beyond participating in the pilot program "at no cost to the county."

Thus, the evidence in this case is insufficient to support the trial court's finding that the County Commission approved Easterly's voluntary assumption of non-statutory duties. Consequently, it is unnecessary for us to address the issue of whether this Court has authority to approve funding for a county clerk's performance of such duties if approval for the duties is received from the County Commission.

The decision of the trial court is affirmed insofar as it approves additional funding to support the performance of statutorily-mandated duties. The decision is reversed insofar as it approves funding for the performance of non-statutory duties. Although the trial court alluded to Easterly's testimony that performance of the non-statutory duties requires "about 25 per cent" of her

7

employees' time, the trial court made no express finding regarding the amounts approved for the performance of statutory duties and for the performance of non-statutory duties. Therefore, we must remand the case for the trial court to determine the appropriate amount to approve for Easterly's performance of statutorily mandated duties.

The decision of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. The costs on appeal are taxed equally to Appellant and Appellee, for which execution may issue if necessary.


_____
_____HOLLY KIRBY LILLARD, J.


**CONCUR:**


_____
**ALAN E. HIGHERS, J.**


_____
**BEN H. CANTRELL, J.**